IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTRATECH, INC. D/B/A/ ULTRATECH/CAMBRIDGE NANOTECH,<br><br>Plaintiff,<br><br>v.<br><br>ENSURE NANOTECH (BEIJING), INC., ENSURE NANOTECH LLC D/B/A ENSURE SCIENTIFIC GROUP LLC, and DONGJUN WANG,<br><br>Defendants. | No. C 14-05361 WHA<br><br>**ORDER DENYING DEFENDANT DONGJUN WANG'S MOTION TO DISMISS** |

## INTRODUCTION

In this action for misappropriation of intellectual property, one defendant moves to dismiss all claims against him in his individual capacity for lack of personal jurisdiction and failure to state a claim. For the reasons stated below, the motion is **DENIED**.

## STATEMENT

Cambridge NanoTech, Inc., was a Massachusetts company engaged in the manufacture and sale of atomic-layer deposition systems, which are used in the manufacture of semiconductor devices (First Amd. Compl. ¶¶ 1, 5, 39, Exh. A). In 2008, Cambridge NanoTech entered into a sales-agency agreement with Start Science (Beijing) Co., Ltd. (*id.* ¶ 39). That agreement provided that Start Science would serve as a sales agent for Cambridge NanoTech in Taiwan. The agreement included a forum-selection clause and a clause providing that the agreement

1  would inure to the benefits of the successors of the parties to the agreement (*id.* Exh. A
2  Sections 5.2, 5.9).

3  Defendant Dongjun Wang, a citizen and resident of China, signed that agreement as
4  president of Start Science (*id.* ¶¶ 8, 39). Wang and Start Science were then given access
5  to Cambridge NanoTech's marketing and sales information, including design drawings, manuals,
6  operating software, price lists, parts lists, vendor information, and competition analyses
7  (*id.* ¶ 43).

8  While Start Science was still acting as a sales agent for Cambridge NanoTech, Wang
9  formed Ensure NanoTech (Beijing), Inc., and Ensure NanoTech LLC (collectively "Ensure
10 NanoTech defendants"), as corporations organized in China and Ohio, respectively (*id.* ¶¶ 6, 7,
11 4, 48). Ensure NanoTech defendants engaged in the manufacture and sale of ALD equipment in
12 competition with Cambridge NanoTech (*id.* ¶¶ 49–50). Some of Ensure NanoTech's digital
13 manuals included metadata listing Cambridge NanoTech model numbers and identifying
14 Cambridge NanoTech as the author of those files (*id.* ¶¶ 52, 56). In 2011, Cambridge NanoTech
15 terminated its sales agency relationship with Start Science (*id.* ¶ 45).

16 Our plaintiff, Ultratech, Inc., acquired Cambridge NanoTech in 2012 (*id.* ¶ 26).
17 Ultratech is the owner of U.S. Patent No. 8,202,575 ("the '575 patent"), which covers ALD
18 technology (*id.* ¶ 32). Ultratech is a Delaware corporation with its principal place of business in
19 San Jose (*id.* ¶ 5).

20 Ultratech's amended complaint includes claims against Wang and Ensure NanoTech
21 defendants for patent infringement, trade secret misappropriation, unfair competition, and
22 copyright infringement, as well as a claim against Wang for breach of the sales-agency
23 agreement.

24 Wang now moves to dismiss all claims against him individually for lack of personal
25 jurisdiction and failure to state a claim. This order follows full briefing and oral argument.

**ANALYSIS**

**1.  WANG'S RULE 12(b)(2) MOTION.**

Wang argues that he is not subject to personal jurisdiction in this forum because he has not purposefully directed any activities at the forum. Ultratech argues that Wang is subject to the forum-selection clause in the sales-agency agreement between Ultratech's predecessor-in-interest, Cambridge NanoTech, and Wang's company, Start Science.

The forum-selection clause in the sales-agency agreement between Cambridge NanoTech and Start Science states (First Amd. Compl. Exh A, Section 5.9):

> Any litigation arising under or related to this Agreement shall be brought in the United States District Court or the state trial court for the division and county in which Client's corporate headquarters are located at the time the litigation is initiated. Agent hereby submits to the personal jurisdiction of these courts and waives all objections to placing venue before them.

In order to reach Wang, the forum-selection clause must apply across three degrees of separation. *First*, the forum-selection clause must inure to Ultratech as a result of its acquisition of Cambridge NanoTech. *Second*, the forum-selection clause must apply to Wang, even though he signed the sales-agency agreement on behalf of Start Science. *Third*, the tort claims against Wang must relate to the contractual relationship between Cambridge NanoTech and Start Science. This order finds that all three conditions are met for the breach-of-contract, trade secret, and unfair competition claims, and that Wang is subject to personal jurisdiction in this forum pursuant to the discretionary exercise of pendent personal jurisdiction for the remaining claims.

**A.  Inuring to Ultratech.**

The forum-selection clause specified the location of the client's headquarters in that agreement "at the time litigation is initiated" (First Amd. Compl. Exh. A, Section 5.9). Ultratech argues that the forum-selection clause in the sales-agency agreement designated the district court for the current location of its headquarters as the forum for litigation arising out of the agreement, which is this district. Wang, by contrast, argues the forum-selection clause designated the location of Cambridge NanoTech's headquarters at the time the agreement was *executed*, which was Massachusetts. The sales-agency agreement further provided the

3

1 agreement would inure to the benefit of "the parties, and their respective successors, successors
2 in title, and assigns" (*id.* Exh. A, Section 5.2). That provision does not specifically call out the
3 forum-selection clause, but rather refers to the agreement as a whole.

4 Neither our court of appeals nor any district court in our circuit has addressed the
5 enforceability of a forum-selection clause that designates the forum for litigation arising out
6 of the contract to which it applies as the location of the headquarters of a party to the agreement
7 *at the time litigation is initiated*. In the closest decisions on point, several district courts in our
8 circuit have permitted a successor-in-interest to enforce a forum-selection clause without any
9 specific provision detailing its enforceability in that circumstance. *Ambler v. BT Americas Inc.*,
10 964 F. Supp. 2d 1169, 1173 (N.D. Cal. 2013) (Judge Edward Davila); *South County Professional*
11 *Park, Ltd. v. Orchard Supply Company LLC*, Docket Nos. 14-civ-02348, 2014 WL 3706825 at
12 \*3 (N.D. Cal. July 21, 2014) (Judge Paul Grewal); *Comerica Bank v. Whitehall Specialties, Inc.*,
13 352 F. Supp. 2d 1077, 1080 (C.D. Cal. 2004) (Judge Robert Timlin). No district court in our
14 circuit has declined to permit a successor-in-interest to enforce a forum-selection clause.

15 Wang's only dispute relating to Ultratech's right to enforce the forum-selection clause
16 relies on the claim that the clause designated the district in which "Cambridge NanoTech was
17 *then* headquartered" (Def. Mot. at 8). He cites no source of authority in support of this claim.

18 In the absence of controlling authority, and with the benefit of persuasive holdings by
19 sister district courts, this order holds that the reach of the provision in question is a matter of
20 contract interpretation. At least at the pleading stage, our district is a proper venue for certain of
21 the claims alleged in light of the fact that Ultratech is a successor-in-interest to Cambridge
22 NanoTech. The parties to the sales-agency agreement clearly contemplated that Cambridge
23 NanoTech could change the location of its headquarters and the venue designation would follow
24 that change. The parties also agreed that the contract would "inure to the benefit of the parties,
25 and their respective *successors*, successors in title, and assigns" (First Amd. Compl. Exh 1,
26 Section 5.2) (emphasis added). If Cambridge NanoTech was free to move the venue by simply
27 changing its headquarters designation, then that power should be accorded to Ultratech as well.
28

4

One possible exception would be if Cambridge NanoTech was still in existence, even if as a shell corporation, in Massachusetts, and continued to own any assets relating to the sales-agency agreement acquired directly or indirectly by Ultratech. Upon inquiry by the Court, Ultratech has shown that all contract rights of Cambridge NanoTech were acquired by Ultratech in 2012. Cambridge NanoTech continues to exist as an unincorporated division of Ultratech, but there is no indication that it is a separate entity that holds any rights relating to the sales-agency agreement, and Wang points to no evidence to the contrary. Wang's only argument on this point is that contract rights did not appear on a schedule of assets to be acquired by Ultratech. A comprehensive review of the merger demonstrates that the schedule referenced is not the exhaustive list of assets acquired, but rather the list of personal property acquired. The contract rights were included in the full scope of the purchased assets. If discovery reveals that the Court misunderstands the facts, then the parties may move for a change of venue to Massachusetts.

A second possible exception would be if the headquarters had been moved to a distant location like Israel. In that circumstance, a question of reasonableness would arise, meaning the power to re-designate headquarters might be limited by a rule of reason, insofar as it relates to litigation venue. This consideration is not present here because all that has occurred is a change from Massachusetts to California — if anything, a shift to a more convenient forum for Wang.

### B. Applicability to Wang.

The next degree of separation concerns whether Wang in his individual capacity is bound by the forum-selection clause. A forum-selection clause in an agreement extends to "a range of transaction participants, parties *and non-parties*." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (emphasis added). In *Manetti-Farrow*, that range of non-parties included officers of a signatory corporation sued in their individual capacity. Our court of appeals has not elaborated on the scope of that range of transaction participants except to apply a forum-selection clause to sister corporations of a party to an agreement where their alleged liability was closely related to the contractual relationship. *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 456 (9th Cir. 2007). It has, however,

5

continued to cite to this aspect of the *Manetti-Farrow* decision with approval.  *See TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990).

With one exception, every district court in our circuit that has considered whether to apply a forum-selection clause to a corporate officer or related company that was not part of the agreement to which it applies in his or her individual capacity has enforced that forum-selection clause, provided the claims in the suit related to the contractual relationship.  *Sawyer v. Bill Me Later, Inc.*, Docket No. 10-civ-04461, 2011 WL 7718723 at *4 (C.D. Cal. Oct. 21, 2011) (Judge S. James Otero); *Randhawa v. Skylux Inc.*, Docket No. 09-civ-2304, 2009 WL 5183953 at *10 (E.D. Cal. Dec. 21, 2009) (Judge William Shubb); *Aspitz v. Wtness Systems, Inc.*, Docket No. 07-civ-02068, 2007 WL 2318004 at *1 (N.D. Cal. Aug. 10, 2007) (Judge Richard Seeborg); *Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1434 (N.D. Cal. 1997) (Judge Edward Infante).

The exceptional case is *Pinnacle Fitness and Recreation Management LLC v. Jerry and Vickie Moyes Family Trust*, No. 08-civ-1368, 2010 WL 5141686 at *2 (S.D. Cal. Dec. 13, 2010) (Judge Marilyn Huff), which rested on the premise that a non-party could only be subject to a forum-selection clause if she "agree[d] to be so bound."  This interpretation swallowed the rule of *Manetti-Farrow* by effectively precluding non-parties from being subject to the forum-selection clause, since a person's agreement to be personally bound by the agreement would make that person a party to the agreement.

This order follows the prevailing trend of enforcing a forum-selection clause against a non-party officer where the claims against the officer in his individual capacity relate to the contractual relationship, at least where the officer is a signatory and where the officer is accused of subverting the very agreement he signed.  As discussed below, at least some of the claims against Wang individually relate to the contractual relationship between Cambridge NanoTech and Start Science.  Accordingly, he is subject to the forum-selection clause of the sales-agency agreement.  But that does not end the jurisdictional inquiry.

6

### C. Relationship to the Claims.

Wang must be subject to personal jurisdiction for each claim in Ultratech's complaint. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). A forum-selection clause may apply to tort claims if adjudication of those claims require interpretation of the underlying agreement. *Manetti-Farrow*, 858 F.2d at 513.

Ultratech's claims for trade secret misappropriation, unfair competition, and breach-of-contract all require interpretation of the sales-agency agreement. The trade secret and unfair competition claims will both require interpretation of the agreement to determine the scope of information provided to Wang and the scope of confidentiality and exclusivity provisions protecting that information (*id.* ¶¶ 89, 91, 99). The breach-of-contract claim plainly requires interpretation of the agreement.

This order need not resolve whether Ultratech's patent or copyright claims will require interpretation of the sales-agency agreement. Our court of appeals has adopted a concept of "pendent personal jurisdiction," which permits a court to assert personal jurisdiction over a claim if it arises out of a "common nucleus of operative facts" with the claims over which it has an independent basis for personal jurisdiction. *Action Embroidery*, 368 F.3d at 1180. Each of the five claims in Ultratech's complaint arises out of the allegation that Wang formed Ensure NanoTech defendants to compete with Cambridge NanoTech, now Ultratech, with copies of its devices and materials, and relying on misappropriated trade secrets and proprietary information. Joint adjudication of the patent and copyright claims alongside the claims against Wang for trade secret misappropriation, unfair competition, and breach-of-contract, serves the goals of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties," as contemplated in *Action Embroidery*. *Id.* at 1182.

Wang's argument that he is not bound by the forum-selection clause because he is not the alter ego of Start Science is irrelevant to this inquiry. Wang's role as the subverter of the contract gives rise to each of Ultratech's claims, and that is sufficient to apply the forum-selection clause to him for those claims, even as a non-party to the contract. *Manetti-Farrow*, 858 F.2d at 514.

7

Similarly, this order need not address Wang's contention that his contacts with the forum are insufficient under the standards for general or specific jurisdiction. Because Wang is subject to the forum-selection clause, he has consented to personal jurisdiction here, regardless of the scope of his contacts.

Wang also argues that he is not subject to personal jurisdiction in this forum because the claims alleged against him relate to conduct done in the course of his employment for Ensure NanoTech defendants. Wang cites to *Richtek Technology Corp. v. uPI Semiconductor Corp.*, No. 09-civ-05659, 2011 U.S. Dist. LEXIS 58354 at *15–16 (N.D. Cal. Jan. 3, 2011), as support for that contention. There, patent and copyright infringement claims against individual defendants were dismissed for lack of personal jurisdiction because plaintiff failed to allege that each individual had personally performed the acts necessary to state a claim. Some of the defendants had visited the forum state in the course of their employment, but that was insufficient to establish jurisdiction. Whether the claims alleged against Wang relate to conduct done in the course of his employment is discussed in resolving Wang's Rule 12(b)(6) motion. That argument is irrelevant here; Wang has consented to personal jurisdiction in this forum by way of the forum-selection clause.

If discovery somehow reveals that the foregoing facts are untrue, for example, if discovery shows that Wang was not a signatory to the sales-agency agreement, then a summary judgment motion directed at that issue will be entertained. Meanwhile, Wang's motion to dismiss for lack of personal jurisdiction is **DENIED**.

2. **WANG'S RULE 12(b)(6) MOTION.**

Defendant Dongjun Wang moves to dismiss for failure to state a claim against him as an individual because his allegedly infringing conduct was done in the course of employment for Ensure NanoTech defendants or Start Science. Ultratech argues that it has sufficiently pled claims against Wang for conduct done in his individual capacity, or in the alternative, that Wang is the alter ego of Ensure NanoTech (Beijing) and Start Science.

8

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Each claim against Wang is addressed in turn.

### A. Patent Infringement.

Ultratech's complaint alleges claims against Wang for direct, induced, and contributory patent infringement (First Amd. Compl. ¶¶ 68, 70, 74–75). Wang argues that each of these claims should be dismissed because the facts that relate to those claims relate to his conduct as an employee of Ensure NanoTech defendants, not as an individual.

#### (1) Direct Infringement.

A claim for direct patent infringement need only satisfy the requirements of Form 18 in the Appendix to the Federal Rules of Civil Procedure in order to state a claim. *In re Bill of Lading Transmission and Processing Systems Patent Litigations*, 681 F.3d 1323 (Fed. Cir. 2012). Form 18 requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by making, selling, and using the device embodying the patent; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). Ultratech's complaint satisfies each of these requirements (First Amd. Compl. ¶¶ 19, 32, 68, 71, 86–87). Accordingly, Ultratech has stated a claim for direct patent infringement.

#### (2) Indirect Infringement.

The "corporate veil" may shield an officer of a corporation from personal liability for inducement of patent infringement committed in the name of the corporation unless that officer "actively assist[ed]" with the corporation's induced infringement. *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010). Similarly, a corporate officer may be personally liable for indirect infringement regardless of the corporate form if he "personally participat[ed]" in contributory infringement. *Id.* at 1317.

The complaint alleged that Wang exercised broad and complete control over Ensure NanoTech defendants' business and operations, and Wang does not dispute that the facts alleged

9

plausibly establish that he actively assisted with Ensure NanoTech defendants' induced infringement or personally participated in their contributory infringement (First Amd. Compl. ¶¶ 21, 74). Nor does Wang dispute that he himself induced Ensure NanoTech defendants to infringe the '575 patent (*Id.* ¶ 75). Rather, Wang's challenge to this claim is that Ultratech has failed to plead "knowledge that the induced acts constitute patent infringement" as required for both induced and contributory infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 564 U.S. ____, 131 S. Ct. 2060, 2068 (2011).

Not so. The complaint alleged that Wang knew or should have known that the ALD systems made and sold by the Ensure NanoTech defendants were copies of specific Ultratech systems, and indeed, that he directed those companies to make and sell them (First Amd. Compl. ¶¶ 50–59). It further alleged that Wang had knowledge of, or was willfully blind to, the fact that the ALD systems Ensure NanoTech allegedly copied from Cambridge NanoTech were protected by patents because Wang signed the sales-agency agreement, which explicitly reserved Cambridge NanoTech's intellectual property rights in its systems (*id.* ¶¶ 18, 86).

From these facts, one could plausibly infer that Wang knew of, or was willfully blind to, the existence of the '575 patent, and specifically intended for Ensure NanoTech defendants' ALD systems to infringe the patents that covered Ultratech's ALD systems. Accordingly, Ultratech has stated claims against Wang for induced and contributory patent infringement.

### B. Trade Secret Misappropriation.

A plaintiff states a claim under the California Uniform Trade Secrets Act, Cal. Civ. Code. 3426 *et seq.*, if it can show: (1) that the plaintiff owned a trade secret, (2) that the defendant acquired, disclosed, or used that trade secret through improper means, and (3) that the defendant's actions harmed the plaintiff. *CytoDyn of N.M., Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008). Wang only disputes whether Ultratech adequately pled the second element as to him individually.

Ultratech has sufficiently pled facts that plausibly show that Wang acquired and disclosed facts that he was obligated not to use or disclose. Specifically, the complaint alleged that Wang received Cambridge NanoTech's trade secrets pursuant to the sales-agency

agreement, that he knew or should have known that information constituted trade secrets, and that he subsequently disclosed that information, or personally directed Start Science to disclose that information to Ultratech (First Amd. Compl. ¶¶ 39–44, 90). These facts state a plausible claim that Wang himself acquired, disclosed, or used Ultratech's trade secrets without authorization.

### C. Unfair Competition.

A plaintiff sufficiently pleads common law unfair competition under California law by alleging "(1) that [plaintiff] had invested substantial time, skill or money in developing its property; (2) that [defendants] appropriated and used [plaintiff's] property at little or no cost; (3) that [defendants'] appropriation and use of [plaintiff's] property was without the authorization or consent of [plaintiff]; and (4) that [plaintiff] could establish that it has been injured by [defendants'] conduct." *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 842 (9th Cir. 2004) (citing *Balboa Insurance Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342 (1990)).

Wang argues only that Ultratech has not alleged any facts that plausibly state a claim against him individually. As with the trade secret misappropriation claim, Ultratech has alleged that Wang, himself, disclosed information that he received pursuant to the sales-agency agreement (First Amd. Compl. ¶¶ 39–44, 99). Accordingly, Ultratech has stated a claim for common law misappropriation against Wang as an individual.

### D. Breach-of-Contract.

Ultratech claims that Wang breached the sales-agency agreement. Wang argues that he was not personally bound to the terms of that agreement, so he can't be held personally liable for breaching it.

"Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually." *Vasquez v. Trojan Metals*, 176 F.3d 486 (9th Cir. 1999) (quoting *United States Liability Insurance Co. v. Haidinger-Hayes*, 1 Cal. 3d 586, 595 (1970)). However, an officer may be liable for breach-of-contract if was the alter ego of the breaching party.

11

This order need not evaluate whether Wang was personally bound by the sales-agency agreement because Ultratech has adequately pled that Wang was the alter ego of Start Science. An individual can be deemed an alter ego of a corporation if: (1) there is a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone. *Automotriz Del Golfo De California S.A. de C.V. v. Resnick*, 47 Cal. 2d 792, 796 (1957).

The complaint alleges that Wang was the president, principal, and sole owner of Start Science, that he controlled all aspects of Start Science's business and day-to-day operations, and that he negotiated and signed the sales-agency agreement (First Amd. Compl. ¶¶ 8, 21). From these facts, one could plausibly infer there was a unity of interest between Wang and Start Science. Other factors, such as commingling of funds, disregard of corporate formalities, and undercapitalization are often considered in evaluating alter ego liability. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000). Those considerations are better evaluated with the benefit of discovery. At this stage, Ultratech has adequately shown a unity of interest.

As to inequitable result, given the strong allegations that Wang used his position as a controlling shareholder of Start Science and as a signatory to the sales-agency to position himself to misappropriate materials received by him pursuant to that agreement, it would be plainly inequitable for Wang to escape liability for subverting the confidentiality and exclusivity protections he negotiated and agreed to on behalf of Start Science simply because he was not personally a party to the agreement. Accordingly, Ultratech has stated a claim against Wang for breach-of-contract.

### E. Copyright Infringement.

In order to establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). Wang only disputes whether the complaint alleged that he personally copied elements of Ultratech's copyrighted material.

The complaint alleged that Wang provided, or personally directed Start Science to provide, copies of copyrighted materials such as instruction manuals and software to Ensure NanoTech defendants and their customers without authorization from Cambridge NanoTech or Ultratech, or that he personally directed Ultratech to copy those materials (First Amd. Compl. ¶¶ 116–122). Wang cannot meaningfully argue that he himself brought copies of Cambridge NanoTech's copyrighted materials across the threshold from Start Science to Ensure NanoTech defendants in his capacity as an employee of either company. Ultratech has plausibly stated a claim against Wang for copyright infringement.

Wang's argument that Ultratech's claims should be dismissed because corporate officers are not liable for the torts of a corporation is inapposite. Wang spills two pages worth of ink discussing decisions that dismissed claims against individuals whose alleged tortious conduct was done in their capacity as officers (Def. Mot. at 13–14). But Ultratech has adequately pled facts that demonstrate that Wang himself, or as the alter ego of Start Science, performed acts that make out each claim for relief. The corporate veil cannot protect Wang from liability for these claims.

## CONCLUSION

For the foregoing reasons, Dongjun Wang's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 5, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13